Michael J. Nader CA Bar No. 200425
Michael.Nader@ogletree.com
Alexandra Asterlin CA Bar No. 221286
alexandra.asterlin@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA  95814
Telephone:     916-840-3150
Facsimile:      916-840-3159

Robert Vorhees CA Bar No. 297936
robert.vorhees@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA  92626
Telephone:     714-800-7900
Facsimile:      714-754-1298

Attorneys for Defendants
Miller Pipeline, LLC and Artera Services, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IGNACIO AMEZCUA, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>MILLER PIPELINE, LLC, an Indiana limited liability company; ARTERA SERVICES, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive;<br><br>Defendants. | Case No.<br><br>**DEFENDANT MILLER PIPELINE, LLC AND ARTERA SERVICES, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331, 1441, AND 1446**<br><br>[*Filed concurrently herewith Civil Cover Sheet; Certificate of Conflicts and Interested Entities or Persons; Corporate Disclosure Statement; Declaration of Samantha Kappus; and Notice of Related Cases*]<br><br>Complaint Filed:     January 23, 2024<br>Trial Date:              None Set<br>District Judge:      Hon. TBD<br>Magistrate Judge:  Hon. TBD |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants MILLER PIPELINE, LLC and ARTERA SERVICES, LLC (collectively referred to as "Defendants"), respectfully petitions the Court to remove this action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California. Removal is proper because this Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, as this action arises under federal law. Specifically, Plaintiff IGNACIO AMEZCUA's ("Plaintiff") claims are substantially dependent upon the interpretation of a collective bargaining agreement that governs the terms and conditions of Plaintiff's employment. Plaintiff's claims are, therefore, preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq., and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c). In support of this removal, Defendants state the following pursuant to 28 U.S.C. § 1446(a):

**I.    BACKGROUND AND SUMMARY OF PLEADINGS**

1.    Plaintiff Ignacio Amezcua was employed by Defendant Miller Pipeline, LLC ("Miller Pipeline"). At all relevant times, Plaintiff's employment was subject to a collective bargaining agreement.

2.    Specifically, Plaintiff was initially represented by the Northern California District Council of Labors of the Laborers' International Union of North America ("Local 304") from the beginning of his employment on May 24, 2021, through October 31, 2022.[1] On October 31, 2022, Plaintiff transferred from Local 304 to Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO ("Local 3"). Plaintiff remained a member of Local 3 from October 31, 2022 through his termination of employment on October 9, 2023.

/ / /

/ / /

---

[1] Although Plaintiff previously worked for Miller Pipeline, this period of employment was prior to January 23, 2020 and beyond the four-year statute of limitations applicable to the claims asserted in the Complaint.

3.  Both the Local 304 and Local 3 CBAs provide the agreements shall cover all working conditions, wages, and hours of employment. (*See* Declaration of Samantha Kappus, ¶¶ 4, 6 Ex. A and B. [hereinafter Kappus Decl."].)

4.  On or about January 23, 2024, Plaintiff commenced the above entitled-action in Superior Court of California, County of Contra Costa, Case No. C24-00176. True and correct copies of the Complaint, Summons, and Civil Case Coversheet, and Notice of Assignment to Department 12 for Case Management Determination are attached hereto as Exhibits 1-4 respectively. A true and correct copy of all other documents currently accessible on the Contra Costa Superior Court's online docket are attached hereto as Exhibit 5.

5.  Plaintiff's Complaint seeks damages pursuant to the California Labor Code, on behalf of himself and other allegedly similarly situated employees who are currently or formerly employed by Defendants during the relevant period. Complaint ¶ 13. As detailed below, Plaintiff's Complaint implicates federal law because the terms and conditions of Plaintiff's and the putative class' employment Defendant Miller Pipeline[2] were subject to a collective bargaining agreement between Miller Pipeline and the Local 3 ("Local 3 CBA"). (Kappus Decl., ¶¶ 4-6.)

6.  Plaintiff's Complaint omits that the terms and conditions of Plaintiff's and putative class' employment with Miller Pipeline were subject to one or more CBAs.

7.  A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of Contra Costa. Exhibits 1-5 contain all process, pleadings, and orders served on Defendants in accordance with 28 U.S.C. § 1446(a), and no other proceedings have been held in this action

/ / /

/ / /

/ / /

/ / /

---

[2] Although Defendant Artera joins in this removal, Defendants contend Artera never employed Plaintiff. (Kappus Decl., ¶ 3.)

II. **REMOVAL IS PROPER UNDER FEDERAL QUESTION JURISDICTION UNDER THE LABOR MANAGEMENT RELATIONS ACT**

8. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), because it is a civil action that presents a federal question.

9. Plaintiff's claims are either based upon or preempted by federal law, specifically Section 301 of the LMRA ("Section 301"), 29 U.S.C. § 185. Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

10. Section 301 preempts state law claims requiring interpretation of a CBA. "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23 (1983).) Section 301 also preempts "any state [law] claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988). "[T]he key to determining the scope of Section 301 preemption is not based on how the complaint is framed," it is based on whether resolution of the claims requires "referring to the terms of the…[CBA]." *Id*. The reason is that "the interpretation of [CBAs] is exclusively a matter for arbitration under federal law." *Levy v. Skywalker Sound*, 108 Cal.App.4th 753, 762 (2003). "Once preempted, 'any claim purportedly based on [a] state law is considered, from its inception, a federal claim, and therefore arises under federal law'." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

11. A plaintiff cannot avoid Section 301 preemption by "artfully pleading" a claim to allege state law violations. *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988). For example, where "[r]esolution of plaintiffs' claim to overtime pay ... cannot be decided by mere reference to unambiguous terms of the agreement," it is preempted. *Id*. Similarly, where a collective bargaining

agreement satisfies the requirements of Labor Code Section 514, and the right to overtime exists solely as a result of the CBA, and the claim is preempted under Section 301 of the LMRA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1154-55 (9th Cir. 2019). Courts also find meal and rest period claims to be preempted where the applicability of the Labor Code provisions require analysis and interpretation of a CBA. See e.g., *Coria v. Recology, Inc.*, 63 F.Supp.3d 1093, 1097 (N.D. Cal. 2014); *Ayala v. Destination Shuttle Servs. LLC*, No. cv-13-6141 GAF (PJWx), 2013 WL 12092284, at *4 (C.D. Cal. Nov. 1, 2013). Similarly, where a collective bargaining agreement satisfies the requirements of Labor Code Section 512(e), and the right to meal periods exists solely as a result of the CBA, and the claim is preempted under Section 301 of the LMRA. *Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal.App.4th 227, 236, 238 (2014); *Coria*, 63 F.Supp.3d at 1097.

12. Section 301 of the LMRA provides a basis for federal jurisdiction, and authorizes federal courts to develop a federal common law of the interpretation of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988). To ensure uniform interpretations of collective bargaining agreements, federal common law preempts the use of state law in collective bargaining agreement interpretation and enforcement. *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962); *Lingle*, 486 U.S. at 411.

13. Further, all state law claims that require interpretation of a collective bargaining agreement must be brought pursuant to Section 301 of the LMRA. *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985); *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988) (concluding "[t]he preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . [and] any state claim whose outcome depends on analysis of the terms of the agreement."); *see also Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").

14. Section 301 preempts California state law claims that are substantially dependent upon interpretation of a CBA. *Firestone*, 219 F.3d at 1066-67 (claim preempted by Section 301

1  where the CBA had to be interpreted to resolve the plaintiff's wage claims). This remains true even
2  where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause
3  of action. *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages
4  preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the
5  level set by the CBA"). Thus, any suit "alleging a violation of a provision of a labor contract must
6  be brought under § 301 and be resolved by reference to federal law." *Curtis*, 913 F.3d at 1152 ("A
7  state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-
8  empted by federal labor law").

9      15.    Adjudicating Plaintiff's Complaint will require interpretation of the CBAs. First,
10 Plaintiff's claims are premised upon, and therefore derivative of, the various underlying violations
11 of the California Labor Code identified in Plaintiff's Complaint. *See* Complaint, *generally* (basing
12 claims on Labor Code violations). As detailed below, many (if not all) of the underlying labor code
13 violations alleged in Plaintiff's Complaint are preempted due to the CBAs. Thus, Section 301 of the
14 LMRA preempts the underlying Labor Code violations. *See*, *e.g.*, *Lingle*, 486 U.S. at 405-06 ("[I]f
15 the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement,
16 the application of state law . . . is preempted").

17     A.    **Plaintiff's Claims are Preempted by the LMRA Because They Require**
18           **Substantial Interpretation of a CBA**
19         1.    **Plaintiff's Failure to Reference Section 301 of the LMRA in His**
20           **Complaint Does Not Preclude Removal**

21     1.    The Complaint omits the fact that Plaintiff and putative class members' employment
22 claims are subject to collective bargaining agreements. However, a plaintiff may not be permitted to
23 "artfully plead" his complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish*
24 *Grottos, Inc.*, 830 F.2d 993,997 (9th Cir. 1987). Thus, the Court may properly look beyond the face
25 of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See*
26 *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the
27 Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff
28 presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans*

1 | *World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds in Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

2. An artfully pled state law claim is properly "re-characterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

3. To determine whether a claim alleging violations of state law is preempted by Section 301(a) of the LMRA, the Ninth Circuit employs a two-step test. *Curtis*, 913 F.3d at 1152. First, the Court asks "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Id.* (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). If so, "the claim is preempted, and [the] analysis ends there." *Burnside*, 491 F.3d at 1059. If not, the courts consider whether a plaintiff's state law right is substantially dependent on analysis of the CBA. *Curtis*, 913 F.3d at 1153. If claims are dependent on interpretation of the CBA, then the claim is also preempted by Section 301. *Franco v. E-3 Sys,* No. 19-cv-01452-HSG, 2019 WL 6358947, at *2 (N.D. Cal. Nov. 8, 2019) (citing *Burnside*, 491 F.3d at 159-60).

**2.     Resolution of Plaintiff's Claims Will Require Substantial Interpretation of the Provisions of the Applicable CBA**

4. Plaintiff's allegations that Defendants violated the California Labor Code involve various rights that "exist solely as a result of the CBA" and/or are "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chambers*, 471 U.S. at 213. Specifically, Plaintiff's Complaint seeks damages, based on the following alleged violations: (1) unpaid overtime wages (Lab. Code §§ 510 and 1198); (2) failure to provide meal period premiums (Lab. Code §§ 226 and 512(a)); (3) unpaid rest period premiums (Lab. Code § 226.7); (4) unpaid minimum wages (Lab.

Code §§ 1194 and 1197); (5) final wages not timely paid (Lab. Code §§ 201 and 202); (6) non-compliant wage statements (Lab. Code § 226(a)); (7) unreimbursed business expenses (Lab. Code §§ 2800 and 2802); and (8) violation of California Business and Professions Code §§ 17200, et seq.

5. **Plaintiff's Overtime and Unpaid Wage Claims:** Plaintiff's Complaint seeks damages, in part, for Defendants' alleged failure to pay overtime. Specifically, Plaintiff alleges that "Plaintiffs and other class members worked in excess of eight (8) hours per day, and/or excess of forty (40) hours in a week" (Complaint, ¶ 47), and "failed to pay overtime wages owed to Plaintiff and other class members (but not all)" (Complaint ¶ 48). In other words, the focus of Plaintiff's overtime claims is that he and other putative class members were not properly compensated for all overtime worked.

6. An overtime claim is preempted where "[r]esolution of plaintiffs' claim to overtime pay [or other wages] … cannot be decided by mere reference to unambiguous terms of the agreement." *Firestone*, 281 F.3d at 802. Further, Labor Code § 514 states that § 510 (the Labor Code's overtime provisions) "do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." "Therefore, if the CBA that applies to an employee is a 'qualifying CBA' carved out from Section 510 by Section 514, then the right to overtime pay exists solely as a result of the CBA and therefore is preempted under § 301." *Loaiza v. Kinkisharyo Intern., LLC*, No. CV1907662JAKKSX, 2020 WL 5913282, at *3 (C.D. Cal. Oct. 6, 2020); *Franco*, 2019 WL 6358947, at *4.

7. Assuming, *arguendo* that Plaintiff's underlying claims are valid, the Local 304 and Local 3 CBAs expressly satisfy the requirements of Section 514, because they provide the wages, hours of work, working conditions, premium wage rates for overtime, and an hourly pay rate that is greater than 30 percent more than the California minimum wage. (*See* Kappus Decl. ¶ 6, Ex. A at pgs. 40-61; Ex. B at pgs. 2-25.) All of the employee-categories in the Local 3 CBA's wage scale are assigned hourly rates of pay that exceed Labor Code § 514's requirement. *Id.; see also Sachs v.*

*Pankow Operating, Inc.*, 2:21-cv-08998-AB (ADSx), 2022 WL 489696 at *6 (C.D. Cal. Feb. 16, 2022) (§ 514 requirements met when the "vast majority" of the employee categories in the CBA are assigned hourly rates of pay that exceed this requirement). As a result, these overtime wage claims are preempted under the LMRA analysis, and the Court will have to engage in this analysis to resolve the claims.

8. Additionally, the Court will need to interpret the CBAs to resolve any overtime claim. The Court will have to interpret the CBAs for a variety of information, including (1) assessing the wage scale of the applicable CBA to determine the appropriate rate of pay for numerous groups of employees; (2) determining the applicable rates of pay and premium rates, given that the CBAs provide for items like different premium rates depending on the day or hours worked as defined; and (3) determining which time is compensable based on the timekeeping/overtime rules in the CBAs. *See e.g.* Kappus Decl. ¶ 6, Ex. B, pg. 42 (providing at least four hours of overtime for work performed on a weekend, holiday, unless the work immediately precedes the employees regular shift). Moreover, the Court will need to interpret special working rules, including, but not limited to the type of work conditions which were contemplated under the CBA to trigger the overtime requirements, such as greasing up, tide work, underground work, tunnel shift work, and travel time apply. *Id.* at p. 41, 49, 50, 54, 61-62, 64-66, 70, 73, Thus, if an employee has hours that he or she claims have not been compensated, whether such time is compensable, the rate at which they need to be paid for that time, and the hours that are compensated for purposes of overtime, will require close interpretation of the CBA.

9. Plaintiff's Complaint also includes unpaid minimum wage claims that "Defendants failed to pay Plaintiff and other class members at least minimum wages for all hours worked." (Complaint, ¶ 36.) Since Plaintiff's claim for unpaid minimum wages is based on the same or similar conduct as the overtime claim, this cause of action is also subject to the LMRA preemption arguments set forth above, and will require interpretation of the CBAs. *Loaiza*, 2020 WL 5913282, at *21 (To the extent a cause of action relies on an overtime violation, it is derivatively preempted to the same extent as a cause of action for failure to pay overtime). Furthermore, the CBAs set forth the parties' mutual agreement regarding all issues pertaining to employee wages, including hours

1 worked.[3] Kappus Decl. ¶ 6, Exhibit B. For this additional reason, Plaintiff's and the putative class members' rights to wages, compensation, and overtime substantially depend on an analysis of the CBAs.

10.  **Plaintiff's Meal Period Claims:** Plaintiff's complaint includes claims for Defendants' alleged failure to provide compliant meal periods. Complaint, ¶¶ 26-27, 30, 35, 60-66. Once again, these claims seek to vindicate rights that require analysis and interpretation of the CBA.

11.  California's meal period requirements do not apply to an employee covered by a valid collective bargaining agreement that satisfies the requirements of Labor Code § 512(e). Specifically, the meal period provisions do not apply to an employee specified in subdivision (f) if: (1) The employee is covered by a valid collective bargaining agreement; and (2) it expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. Lab. Code § 512(e). Where § 512(e) applies, courts find the meal period claims preempted under Step 1 of the above LMRA preemption analysis. *Araquistain,* 229 Cal.App.4th at 236, 238; *Coria,* 63 F.Supp.3d at 1097; *Mireles v. Paragon Syst. Inc.*, No. 13-cv-122 L (BGS), 2014 WL 4385453, at *5-6 (S.D. Cal. Sept. 4, 2014). Furthermore, where an analysis of the plaintiff's meal or rest period claims are dependent on interpretation of the CBAs, the claims are also preempted on this basis. *Chatman v. Wedriveu, Inc.*, No. 3:22-cv-04849-WHO, 2022 WL 15654244 (N.D. Cal. Oct. 28, 2022); *Raphael v. Tesoro Refining and Marketing Co., LLC*, No. 2:15-cv-02862-ODW (Ex), 2015 WL 3970293, at *6-7 (C.D. Cal. June 30, 2015); *Buck v. Cemex*, No. 1:13-cv-00701-LJO-MJS, 2013 WL 4648579, at *6 (E.D. Cal. Aug. 29, 2013).

12.  Assuming, *arguendo* that Plaintiff's underlying meal claims are valid, the CBAs expressly satisfy the requirements of § 512(e). Defendants are engaged in a construction and pipeline

---

[3] The Local 3 CBA incorporates a Letter of Understanding Waiving Local Minimum Wage Ordinances.

industry, and the CBAs provide the wages, hours of work, and working conditions, expressly provide for meal periods for covered employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. *See* Kappus Decl. ¶¶ 4-6, Ex. A and B. As a result, the claims are preempted under Step 1 of the LMRA analysis, and the Court will have to engage in this analysis to resolve the claims.

13. Moreover, the Court will need to interpret the CBAs to resolve any meal period claim. Each of the CBAs provide for meal periods, and expressly lay out the conditions under which employees are entitled to such breaks. *See id.* To resolve Plaintiff's meal period claims, the Court will have to determine the meaning of the various CBAs' requirements.

14. This includes the CBAs' meal period timing requirements and the employee's obligation to take meal period. For example, the "Local 3 CBA" applicable to Plaintiff provides that "[t]here shall be a regularly scheduled meal period. The meal period shall be one-half (1/2) hour and shall be scheduled to begin not more than one-half (1/2) hour before and completed not later than one (1) hour after the mid-point of the regularly scheduled hours of work for each Employee's shift. The meal period for Mechanics, Service and Lubricating Engineers, may be scheduled to permit work at the applicable straight-time rate during the regularly scheduled meal period. If the Individual Employer requires the Employee to perform any work included in Section 02.04.00 of this Agreement through his/her scheduled meal period, the Employee shall be paid at the applicable overtime rate for such meal period and shall be afforded an opportunity to eat on the Individual Employer's time."

15. Additionally, the Court will have to interpret the CBAs requirements for second meal periods. For example, the Local 3 CBA states: "[n]o Employee shall be required to work continuously for more than ten (10) hours per workday without the Individual Employer providing the Employee with an uninterrupted second (2nd) thirty (30) minute meal period. However, if an Employee works over ten (10) hours, the Individual Employer and Employee may mutually agree to waive the Employee's entitled second (2nd) meal period so long as the first meal period was taken and the Employee works not more than a total of twelve (12) hours. Should any provision of

California State Labor Code Section 512 be amended during the term of this Agreement, the parties agree to meet to address those changes in accordance with Section 03.05.00 (General Savings Clause) of this Agreement." Kappus Decl., ¶ 6, Ex. B, pg. 39-40.

16. Any disputes concerning meals and/or rest periods are subject to the Grievance Procedures provided in the CBA. *See id.* Section 06.19.05 (providing "all disputes concerning meals and/or rest periods are subject to the Grievance Procedures provided for in Section 18.00.00 and must be brought to the attention of the Employer, in writing, by the Union or Employee within fifteen (15) business days of the alleged violation. Decisions resolving disputes arising out of the Grievance Procedures shall be final and binding upon both parties.".)

17. **Additional Claims:** Plaintiff's failure to timely pay all wages claims (i.e., failure to timely pay all wages during employment and upon separation of employment), wage statement claims, and unfair competition claims derive from his underlying claims. *See* Complaint, ¶¶ 80, 82-87, 88-93, 96 113 ("Defendants' activities as alleged herein are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code section 17200, et seq.). Thus, these claims are also dependent upon an analysis and interpretation of the CBAs, as set forth above. *See Curtis,* 913 F.3d at 1150, n. 3 (finding inaccurate pay stub and final pay claims to be derivative of and dependent on underlying claims of overtime, meal and rest period, and minimum wages); *Estrada v. Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) (finding that when a claim derives from a LMRA-preempted claim, the derivative claim also fails); *Jimenez v. Young's Market Co., LLC*, No. 21-cv-02410-EMC, 2021 WL 5999082 at *13 (N.D. Cal. Dec. 20, 2021) (finding that claims for failure to pay final wages and provide accurate wage statements were preempted because they were derivative of substantive claims for owed overtime and meal break violations).[4] Further the Local 3 CBA expressly contemplates

---

[4] Plaintiff's remaining claims are also preempted. They are preempted because the CBA must be interpreted to resolve Plaintiff's claims, and/or because they are derivative of preempted claims. *See Firestone*, 219 F.3d at 1066-67; *Estrada v. Kaiser Found. Hospitals*, 678 Fed.App 494, 497 (9th Cir. 2017); *see, e.g.,* Kappus Decl., ¶ 6, Exhibit B, Sections 06.27.00-06.27.04, pg. 41-42 (providing that "Employees are authorized and shall be permitted to take a total of ten (10) minutes during each four (4) hour segment of their assigned work shift for a rest period. There shall be no formal organized rest periods during working hours and as far as practicable the break will be taken as near to the middle of each four (4) hour work segment as possible. Rest periods shall be scheduled in a manner

1  derivative claims under its grievance procedure. *See* Kappus Decl., ¶ 6, Exhibit B at Section 18.05.00,
2  pgs. 70-71.

3       18.    **Grievance and Arbitration Procedure:** The Local 3 CBA expressly calls for final
4  and binding arbitration for any and all disputes concerning the application or interpretation of the
5  CBA's provisions. Kappus Decl., ¶ 6, Ex. B. Specifically, section 18.05.00 provides as follows:

> All claims arising under the Fair Labor Standards Act, the California Labor Code and the Industrial Welfare Commission Order (e.g. Wage Order 16), all derivative claims arising under California Business and Professions Code section 17200, et seq. and all similar claims arising under any applicable local law, **shall be resolved exclusively through binding arbitration before an impartial arbitrator** (referenced herein as "Statutory Claims"). Such claims shall be resolved exclusively through binding arbitration before an impartial arbitrator and shall not be brought in a court of law or before any agency such as the California Labor Commissioner. All substantive and procedural rights applicable to mandatory arbitration of statutory claims shall be observed (e.g., the right to more than minimal discovery, payment of costs by the employer, a written award, etc.).

13       19.    The CBA further provides that the grievance procedures set forth in Section 18.05.00
14  "shall apply to any representative PAGA claims, class and/or individual claims that arise or are
15  pending during the term of the parties' current collective bargaining agreement, regardless of when
16  they were filed with any court or administrative agency."

---

so as not to interfere with workflow or continuous operations and Employees shall coordinate the timing of each ten (10) minute rest break with their supervisors and fellow employees to assure the continuity of work. Employees shall be required to remain in their respective work area, or to take their rest period in a specific area designated by the Individual Employer. It is understood that the Employee will take his appropriate rest period unless the Individual Employer specifically directs the Employee not to take this rest break due to operational requirements. Employees are required to notify their supervisor whenever they are unable to take their state-mandated rest periods. 06.27.03 If an Individual Employer fails to authorize and permit an Employee to take daily rest periods as provided herein, the Employee shall be paid a penalty wage payment equal to one (1) hour at his/her applicable hourly wage rate excluding fringe benefits for missed rest periods that day regardless of the number of missed rest periods….**All disputes concerning meals and/or rest periods are subject to the Grievance Procedures provided for in Section 18.00.00 and must be brought to the attention of the Employer, in writing, by the Union or Employee within fifteen (15) business days of the alleged violation. Decisions resolving disputes arising out of the Grievance Procedures shall be final and binding upon both parties."** *see also id.*, Section 08.01.00, 08.02.03, 11.03.00, 13.06.00-13.06.11, 15.05.00 (providing reimbursement for travel expenses, tools, parking, destruction of property, and subsistence). However, given the clear preemption of the claims discussed, and the fact that the Court may clearly exercise supplemental jurisdiction of the remaining claims under 28 U.S.C. § 1367(a), Defendants do not further discuss the remaining preempted claims.

20. Accordingly, Plaintiff and all covered employees are subject to arbitration as the exclusive remedy per their respective CBAs.

21. The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption. State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107, 142 fn. 18 (1994). As a result, Plaintiff's claims and those of the putative class members are therefore subject to exclusive grievance procedures and arbitration, as discussed herein above. Accordingly, any alleged violation of the various CBAs are subject to the grievance procedures set forth therein. As all of Plaintiff's claims are, in essence, alleged violations of the CBAs, the Court will necessarily have to interpret the grievance and arbitration provisions to analyze the claims in this case. That is, the Court will be required to determine whether the Plaintiff and putative class members were first required to exhaust the grievance procedures, whether they did in fact exhaust those procedures, and whether the parties agreed to arbitrate all or some of their claims. The exhaustion of administrative remedies is a procedural prerequisite to maintaining a Section 301 action. *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 767 (7th Cir. 1991). Before filing suit, federal labor policy dictates that an employee is "[o]rdinarily ... required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)); *Smith*, 943 F.2d at 771.

22. Accordingly, Plaintiff's claims are substantially dependent upon the interpretation of the foregoing CBA terms and provisions. In fact, those terms and provisions govern nearly all of the conduct which forms the basis of the underlying Labor Code violations alleged in Plaintiff's Complaint, and thus are essential to the resolution of Plaintiff's claim. Plaintiff's claims therefore arises under Section 301 of the LMRA, and are preempted by federal law. Removal to federal court is warranted. *See Radcliff v. San Diego Gas & Elec. Co.*, No. 3:20-CV-01555-H-MSB, 2021 WL 532258, at *3 (S.D. Cal. Feb. 12, 2021) (denying motion to remand claim based on alleged lack of original jurisdiction, and finding plaintiff's claim was preempted by § 301 of the LMRA).

## III. SUPPLEMENTAL JURISDICTION

16. Pursuant to 29 U.S.C. § 1367(a), supplemental jurisdiction is appropriate when state and federal claims "derive from a common nucleus of operative facts." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). *See also, Van Bebber v. Dignity Health*, 1:19-cv-00264-DAD-EPG, 2019 WL 4127204, at *9 (E.D. Cal. Aug. 30, 2019) (exercising supplemental jurisdiction over a plaintiff's remaining causes of action because they arose out of the same employment relationship as their overtime claim).

17. Because Plaintiff's remaining claims largely are derivative from the preempted labor code claims, the Court shall exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) to avoid needless expense of judicial resources and the potential for inconsistent judgments due to parallel proceedings. *E.g., Estrada v. Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) (finding that when a claim derives from a LMRA-preempted claim, the derivative claim also fails); *Jimenez v. Young's Market Company, LLC*, 2021 WL 5999082 at *13 (N.D. Cal. Dec. 20, 2021) (finding that claims for failure to pay final wages and provide accurate wage statements were preempted because they were derivative of substantive claims for owed overtime and meal break violations)

18. Specifically, Plaintiff's claims for violations of California's Business & Professions Code §§ 17200, et seq., wage statement violations under Cal. Lab. Code § 226(a), and waiting time penalties under Cal. Lab. Code § 203 are predicated upon facts and circumstances that are inextricably intertwined with and dependent upon an interpretation of the CBA. In addition, the wage claims are intertwined with and dependent upon an interpretation of the CBA. As a result, all the pleaded underlying Labor Code violations emanate from and form part of the same "case or controversy," such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising supplemental jurisdiction over all the underlying alleged violations of the Labor Code and Business and Professions Code in Plaintiff's Complaint. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); Franco v. E-3 Sys., No. 19-CV-01453-HSG, 2019 WL 6358947, at *3 (N.D. Cal. Nov. 8, 2019); *Landy v.*

*Pettigrew Crewing, Inc.*, No. 219CV07474RGKAFM, 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019).

## IV. OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

19. **Removal Was Timely.** Defendants received the Complaint through service of process on January 24, 2024. This Notice is timely filed in accordance with 28 U.S.C. § 1446(b), because it is within thirty (30) days from when Defendants received the pleadings setting forth the claims for relief upon which this removal is based.

20. **State Court Within this Court's Jurisdiction.** Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 84(c) and 1391 because the county in which the State Court Action was pending (Contra Costa) is found within this District.

21. **Consent to Removal.** Defendants move jointly for removal. Defendants are not aware of any other defendants having been served with a copy of Plaintiff's Complaint. Accordingly, the requirements of 28 U.S.C. § 1446(b)(2)(A) are met.

22. **State Court Pleading Attached.** In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendants or filed by Defendants are attached hereto as the following exhibits, including Plaintiff's Complaint (Exhibit 1); Summons of Plaintiff's Complaint (Exhibit 2); Civil Case Cover Sheet (Exhibit 3); Notice of Assignment to Department 12 for Case Management Determination (Exhibit 4); and documents subsequently filed / posted on the docket in the state court action (Exhibit 5).

23. **Filing and Service of Notice of Removal.** This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Contra Costa.

## RESERVATION OF RIGHTS

This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

WHEREFORE, Defendants request that the above action pending before the Superior Court

of the State of California for the County of Contra Costa be removed to the United States District Court for the Northern District of California.

DATED February 23, 2024                OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s/ Robert Vorhees*
    Michael J. Nader
    Alexandra Asterlin
    Robert Vorhees
    Attorneys for Defendants
    Miller Pipeline, LLC and Artera Services, LLC

**PROOF OF SERVICE**
*Ignacio Amezcua v. Miller Pipeline, LLC, et al.*
Case No. CaseNumber

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made. My business address is 695 Town Center Drive, Suite 1500, Costa Mesa, CA 92626.

On February 23, 2024, I served the following document(s):

**DEFENDANT MILLER PIPELINE, LLC AND ARTERA SERVICES, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331, 1441, AND 1446**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as follows:

☒ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Park Tower, Fifteenth Floor, 695 Town Center Drive, Costa Mesa, CA 92626.

☐ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Costa Mesa, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐ **BY MESSENGER SERVICE:** (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐ **BY FACSIMILE:** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

☐ the written confirmation of counsel in this action:
☐ [Federal Court] the written confirmation of counsel in this action and order of the court:

☐ **BY CM/ECF:** With the Clerk of the United States District Court of California, using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

17                                                                                                  Case No.
DEFENDANT MILLER PIPELINE, LLC AND ARTERA SERVICES, LLC'S
NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331, 1441, AND 1446

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

☐ **(Federal)** I declare that I am a **member** of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on February 23, 2024, at Costa Mesa, California.

*/s/ Susan Susebach*
Susan Susebach

**SERVICE LIST**

| | |
|---|---|
| Douglas Han, Esq.<br>Shunt Tatavos-Gharajeh, Esq.<br>Lawrence W. Beall, Esq.<br>JUSTICE LAW CORPORATION<br>751 N. Fair Oaks Ave., Suite 101<br>Pasadena, CA  91103<br>Telephone:     818- 230-7502<br>Facsimile:      818-230-7259<br>dhan@justicelawcorp.com<br>statavos@justicelawcorp.com<br>lawrencebeallesq@gmail.com | Attorneys for Plaintiff<br>Ignacio Amezcua |